UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MURILLO,

        Plaintiff,

        v.

U.S. DEPARTMENT OF JUSTICE,
et al.,

        Defendants.

_____/

CASE NO. 2:13-CV-15273
JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON (1) PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION (docket #5); (2) PLAINTIFF'S EMERGENCY MOTION FOR RESTRAINING ORDER (docket #20); and (3) DEFENDANTS' MOTION TO DISMISS (docket #22)

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
     B.    *Defendants' Motion to Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
          2.    *The <u>Heck</u> Rule and 28 U.S.C. § 2255(h)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
          3.    *Merits of Plaintiff's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
               a.  Merits of the Underlying Sentencing Claim . . . . . . . . . . . . . . . . . . . . . . . .  11
               b.  Bivens Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
               c.  Privacy Act Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
     C.    *Plaintiff's Motions for Injunctive Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
     D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*       *       *       *       *

I.      <u>RECOMMENDATION</u>: The Court should deny plaintiff's motions for preliminary injunctive relief and should grant defendants' motion to dismiss.

II.     <u>REPORT</u>:

A.    *Background*

        Plaintiff Robert Murillo is a federal prisoner, currently confined at the Federal Correctional

Institution in Milan, Michigan.  In 1995, plaintiff was convicted of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846; possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); and possession of a firearm during a drug trafficking offense, 18 U.S.C. § 924(c), following a jury trial in this Court before Judge Robert H. Cleland.  Plaintiff was sentenced to concurrent terms of 235 months' imprisonment on the drug convictions, and to a mandatory term of five years' imprisonment on the firearm conviction.  The Sixth Circuit, applying the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), vacated the firearm conviction and remanded for resentencing.  *See United States v. Murillo*, No. 95-1684, 1996 WL 593607 (6th Cir. Oct. 15, 1996).   The Court resentenced plaintiff to two concurrent terms of 295 months' imprisonment on the drug convictions, and the Sixth Circuit affirmed the Court's sentence.  *See United States v. Murillo*, No. 97-1285, 1998 WL 136595 (6th Cir. Mar. 20, 1998).   Shortly thereafter, plaintiff commenced a series of actions attempting to obtain relief from his sentence:

- On June 14, 1999, plaintiff filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, asserting claims of ineffective assistance of counsel and prosecutorial misconduct.  The Court denied the motion on June 7, 2001, and denied a certificate of appealability on the same date.  *See United States v. Murillo*, No. 2:94-cr-81261 (E.D. Mich. June 7, 2001).  The Sixth Circuit subsequently denied plaintiff a certificate of appealability.  *See United States v. Murillo*, No. 01-2344 (6th Cir. Apr. 29, 2002).

- On March 9, 2004, plaintiff filed a motion in the Sixth Circuit seeking leave to file a successive § 2255 motion.  The Sixth Circuit denied the motion on September 22, 2004.  *See In re Murillo*, No. 04-1303 (6th Cir. Sept. 22, 2004).

- On November 3, 2004, plaintiff filed a motion for reconsideration in this Court pursuant to FED. R. CIV. P. 60(b).  On March 3, 2005, the Court entered an Order transferring the motion to the Sixth Circuit as a successive motion under § 2255.  *See United States v. Murillo*, No. 2:94-cr-81261 (E.D. Mich. Mar. 3, 2005).  The Sixth Circuit subsequently denied plaintiff leave to file a successive motion.  *See In re Murillo*, No. 05-1300 (6th Cir. Dec. 5, 2005).

- On February 1, 2006, plaintiff filed another motion in the Sixth Circuit seeking leave

to file a successive § 2255 motion. The Sixth Circuit denied the motion on September 20, 2006. *See In re Murillo*, No. 06-1151 (6th Cir. Sept. 20, 2006).

- On March 19, 2008, plaintiff filed in this Court a "Motion to Vacate Pursuant to Rule 60(b)(6)." The Court denied the motion on the merits and as untimely on April 25, 2008. *See United States v. Murillo*, No. 2:94-cr-81261 (E.D. Mich. Apr. 25, 2008). The Court denied plaintiff's motion for reconsideration on July 29, 2009. *See id.* The Sixth Circuit denied plaintiff a certificate of appealability on March 8, 2010. *See Murillo v. United States*, No. 09-2009 (6th Cir. Mar. 8, 2010).

- On March 8, 2010, plaintiff filed another motion in the Sixth Circuit seeking permission to file a successive § 2255 motion. In this motion, plaintiff argued that this Court had impermissibly exceeded the 20 year statutory maximum term of imprisonment in imposing sentence. The Sixth Circuit denied the motion on November 16, 2010. *See In re Murillo*, No. 10-1286 (6th Cir. Nov. 16, 2010).

- On May 9, 2011, plaintiff filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that he was actually innocent of the term of imprisonment exceeding 20 years. On May 18, 2011, Judge Edmunds denied the petition. *See Murillo v. Walton*, No. 2:11-cv-12022 (E.D. Mich. May 18, 2011).

- On May 14, 2012, plaintiff filed another habeas petition pursuant to § 2241, again challenging the legality of his sentence beyond 20 years' imprisonment. Judge Edmunds denied the petition on August 1, 2012. *See Murillo v. Walton*, No. 2:12-cv-12156 (E.D. Mich. Aug. 1, 2012).

- Plaintiff filed a third petition pursuant to § 2241 challenging his sentence on August 21, 2012. On October 31, 2012, Judge Cleland denied the petition on *res judicata* grounds. *See Murillo v. Walton*, No. 2:12-cv-13705 (E.D. Mich. Oct. 31, 2012).

Plaintiff, proceeding *pro se*, filed the instant action on December 30, 2013. Named as defendants are the United States Department of Justice, the United States Bureau of Prisons (BOP), Attorney General Eric Holder, BOP Director Charles Samuels, BOP Regional Director Paul Laird, BOP Central Office Administrative Remedy Coordinator Harrell Watts, FCI-Milan Warden J.A. Terris, and various other officials at FCI-Milan. Plaintiff asserts claims under the Privacy Act, 5 U.S.C. § 552a(e)(5), and the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq*., as well as civil rights claims under *Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*, 403

3

U.S. 388 (1977).  Plaintiff alleges that as of May 12, 2012, he was "over [his] 20 year statutory maximum under 21 U.S.C. § 841(b)(1)(C), and from this point in time forward the BOP is executing an illegal incarceration."  Compl., at 7-8.  Beginning in December 2012, plaintiff filed various administrative requests under the Privacy Act and under the BOP's administrative remedy procedures seeking a determination that he has served his maximum sentence and a correction of BOP records.  These requests were all denied by defendants.  *See id.*, at 6-12 & Exs. A-H.  The BOP's position with respect to the matter raised by plaintiff is best exemplified by defendant Terris's January 16, 2013, response to plaintiff's administrative remedy request:

> Your Judgment and Commitment Order is a legal document issued by the United States District Court.  It states, you are committed to the custody of the Federal Bureau of Prisons for a term of 295 months (24 years and 7 months), and with credit for time served as calculated by the Federal Bureau of Prisons.  Upon your sentencing, the court remanded you to the custody of the United States Marshals.  You were designated to the Federal Correctional Institution in Milan, Michigan by the Designation and Sentence Computation Center.  Your current release date is May 7, 2016.  A review of your Judgment and Commitment Order reveals your release date is calculated correctly.

Compl., Ex. B.  Plaintiff asserts that defendants failed to maintain accurate records and refused to amend inaccurate information in his records in violation of the Privacy Act, 5 U.S.C. § 552a(e)(5) (Grounds 1, 3 & 4); conspired to deny him due process of law and his rights secured by the Privacy Act, the Administrative Procedures Act, and the Fifth, Sixth, and Eighth Amendments (Ground 2); and violated his constitutional rights (Ground 5).  Plaintiff seeks monetary damages and various forms of injunctive relief.  Plaintiff also seeks "a limited preliminary habeas corpus determination Declaring the legally accurate statutory question of is the Plaintiff's conviction under either 21 U.S.C. § 841(b)(1)(A) or under the statutory default provision of § 841(b)(1)(C)," Compl., at 42, and an injunction "[o]rdering the immediate process for halfway house placement or home confinement

4

through the U.S. Probation Department in the Eastern District of Michigan, Northern Division until the proper mathematical determination within Plaintiff's currently 'Amended Judgment and Commitment' order is corrected." *Id*. at 44.

The matter is currently before the Court on several motions filed by the parties. On March 3, 2014, plaintiff filed an emergency motion for preliminary injunctive relief pursuant to FED. R. CIV. P. 65(a). In this motion, plaintiff seeks release on bail pending the conclusion of this action. Plaintiff filed an emergency motion for restraining order on April 24, 2014, seeking an injunction preventing the BOP from transferring him, which he fears is likely to occur in retaliation for the instant action. Defendants filed a combined response to these motions on May 16, 2014, and plaintiff filed a reply (titled a "Motion in Opposition to the Defendants' Response") on June 6, 2014. Also pending before the Court is defendants' motion to dismiss, filed on May 12, 2014. Defendants argue that the substance of plaintiff's complaint is a challenge to the length of his sentence, and thus must be brought under 28 U.S.C. § 2255. Because plaintiff has already filed a § 2255 motion challenging his sentence, defendants argue, it must be dismissed as a prohibited successive motion or transferred to the Sixth Circuit for plaintiff to seek authorization to file the petition. Alternatively, defendants argue that plaintiff's claims fail to state a claim upon which relief may be granted. Plaintiff filed a response to this motion on July 10, 2014, and defendants filed a reply on July 24, 2014.

B.    *Defendants' Motion to Dismiss*

Defendants move to dismiss plaintiff's complaint, argument that his claims are not properly brought in this civil rights action, and that in any event the claims fail as a matter of law. The Court should agree.

5

1.    *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6).  In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim.  *Id.* at 47.  Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47.  However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

6

action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 566 U.S. 662, 677-79 (2009) (parallel citations omitted).

Ordinarily, a court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, in deciding whether a complaint states a claim under Rule 12(b)(6) a court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" without converting the motion into one for summary judgment. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004); *see also*, *Realtek Indus., Inc. v. Nomura Secs.*, 939 F. Supp. 572, 575 n.1 (N.D. Ohio 1996). Because they are matters of public record and have been attached to plaintiff's complaint, the Court may take judicial notice of plaintiff's administrative proceedings in the Bureau of Prisons without converting the motion into one for summary judgment. *See Price v.*

*Palmer*, No. 1:09cv172, 2009 WL 5219727, at *3 (W.D. Mich. Dec. 31, 2009) (citing cases); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004); *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1021-23 (S.D. Cal. 2006).

       2.     *The <u>Heck</u> Rule and 28 U.S.C. § 2255(h)*

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Court held that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser*, 411 U.S. at 488-90).  In *Heck*, the Court extended *Preiser* to civil rights suits under § 1983 which seek only damages (and not speedier release) if success on the underlying claim would nevertheless imply that the underlying conviction is invalid.  *See id.* at 486-87.  In *Heck* the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, of for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated *is not cognizable under § 1983.*

*Heck*, 512 U.S. at 486-87 (footnote omitted) (second emphasis added).  Thus, in analyzing whether a claim is barred by the *Heck* rule, a court "must consider whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence." *Id.* at 487 (emphasis added).  The *Heck* rule is not dependent upon plaintiff's characterization of his claim, nor is the applicability of the rule limited to situations in which a plaintiff purports to directly challenge his conviction.  Rather, the *Heck* rule is applicable whenever success on a claim–no matter how characterized by the plaintiff–would necessarily imply that his conviction is invalid.  As the Court

explained in *Heck*, the rule set down in that case applies where "establishing the basis for the damages claims necessarily demonstrates the invalidity of the conviction," *Heck*, 512 U.S. at 481-82, and extends to claims seeking damages not only for wrongful conviction but also "for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id*. at 486. Although *Heck* developed in the context of claims which would necessarily invalidate a state conviction or sentence, it applies equally to claims which would invalidate a federal conviction or sentence. *See Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001).

Here, success on plaintiff's claims would necessarily imply that his sentence is invalid. In the first place plaintiff seeks, in addition to monetary damages, quintessential habeas relief. Plaintiff asks for a preliminary habeas corpus determination and for release to a halfway house. Further, even in the absence of these requests for relief, plaintiff's claims would necessarily imply that his 295 month sentence is invalid. Plaintiff's claims are based on the BOP's records inaccurately reflecting that he was not sentenced under 21 U.S.C. § 841(b)(1)(C), which would have provided a 20 year maximum sentence. If he succeeds on this claim, plaintiff would be entitled to a correction of his BOP records, which would mandate that the BOP immediately release him. *See White v. United States Probation Office*, 148 F.3d 1124, 1125-26 (D.C. Cir. 1998) (plaintiff's Privacy Act challenge to alleged inaccuracies in presentence report, which resulted in higher sentence, necessarily implied invalidity of his conviction); *cf. Skinner v. United States Dep't of Justice*, 584 F.3d 1093, 1099 (D.C. Cir. 2009) (plaintiff's Privacy Act claim based on failure to maintain accurate records would imply invalidity of revocation of good time credits and require speedier release, and thus is barred by *Heck*); *Ellis v. Bureau of Prisons*, 239 Fed. Appx. 466, 469 (11th Cir. 2007) (claim that BOP failed to properly credit time spent in state custody against federal sentence would necessarily imply

invalidity of plaintiff's continued incarceration); *Reeves v. Federal Bureau of Prisons*, 885 F. Supp. 2d 384, 389 (D.D.C. 2012) ("By seeking the amendment of BOP records under the Privacy Act, the plaintiff, in effect, seeks recalculation of his sentence whereby he will become eligible for release earlier than will be the case [if the record is not correct]. He is therefore seeking habeas relief."); *Truesdale v. United States Department of Justice*, 731 F. Supp. 2d 3, 11 (D.D.C. 2010) (internal quotation and alterations omitted) (Privacy Act claim seeking correction of records setting forth date of offense, which bore on prisoner's eligibility for parole, was not cognizable, as "a ruling in plaintiff's favor on his Privacy Act claim would have an impact on the duration of his confinement, and a challenge of that nature is properly brought in a petition for a writ of habeas corpus, not by way of a suit brought under the Privacy Act."). In short, plaintiff's complaint, "which seeks damages in conjunction with a challenge to the length of his confinement, is governed by *Preiser* and *Heck*. Because a judgment in favor of [plaintiff] on his challenge to the legal conclusions in his [Judgment] would necessarily imply the invalidity of his sentence, which has not been invalidated in a prior proceeding, his complaint for damages under the Privacy Act must be dismissed." *White*, 148 F.3d at 1126.[1]

---

[1]Plaintiff's reliance on *Muhammad v. Close*, 540 U.S. 749 (2004), is misplaced. In that case, the Court found that *Heck* did not bar a prisoner's claim for damages arising from time spent in detention prior to a prison disciplinary proceeding. Because the prisoner conceded that the disciplinary proceeding itself was valid and it involved no revocation of good time credits, the Court concluded that the prisoner's "suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence. That is, he raised no claim on which habeas relief could have been granted on any recognized theory, with the consequence that *Heck's* favorable termination requirement was inapplicable." *Id.* at 754-55. Here, as explained above, plaintiff's challenge does "seek[] a judgment at odds with . . . [the BOP's] calculation of time to be served in accordance with the underlying sentence." Likewise, *Wilkinson v. Dotson*, 544 U.S. 74 (2005), and *District Attorney's Office for 3d Judicial Dist. v. Osborne*, 557 U.S. 52 (2009), are inapposite. In *Wilkinson*, the Court concluded that *Heck* did not bar a civil rights challenge to the validity of parole procedures, because the claim did not call into question the validity of the conviction or sentence or seek speedier release, but merely sought a new parole hearing. *See*

Because plaintiff's claims, if successful, would necessarily imply the invalidity of his sentence, and because his sentence has not been invalidated in a § 2255, habeas corpus, or other proceeding, his claims must be dismissed pursuant to *Heck*. In making this recommendation, I note that "'[w]hen a suit that should have been prosecuted under the habeas corpus statute is prosecuted as a civil rights suit instead, it should not be 'converted' into a habeas corpus suit and decided on the merits.' Instead, the matter should be dismissed, leaving it to the prisoner to decide whether to refile it as a petition for writ of habeas corpus." *McQueen v. Worthy*, No. 07-CV-11293, 2007 WL 1009151, at *2 (E.D. Mich. Mar. 29, 2007) (Borman, J.) (quoting *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999)). And even assuming that conversion were appropriate in general, it is not appropriate here because plaintiff has previously filed a § 2255 motion, and thus he may not file another such motion in this Court without first obtaining permission to do so from the Sixth Circuit. *See* 28 U.S.C. § 2255(h). Accordingly, the Court should dismiss plaintiff's claims pursuant to *Heck*.

3.    *Merits of Plaintiff's Claims*

Alternatively, the Court should dismiss plaintiff's claims on the merits.

a. *Merits of the Underlying Sentencing Claim*

At the outset, all of plaintiff's claims fail because the underlying claim–that his sentence is illegal–is without merit. Plaintiff was convicted of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and of possession with intent to distribute marijuana, also in violation of 21 U.S.C. § 841(a)(1). Section 841(a) makes it a crime to, *inter alia*, possess or distribute various controlled substances. Section 841(b) sets forth the applicable penalties

---

*Wilkinson*, 544 U.S. at 82. Here, plaintiff does seek speedier release, or relief that would necessarily require a speedier release. In *Osborne*, the Court explicitly found it unnecessary to decide the *Heck* issue raised in that case. *See Osborne*, 557 U.S. at 67.

for violations of § 841(a).  Section 841(b)(1)(C) sets a default rule of a term of imprisonment up to

20 years.  If the offense involves certain amounts of various controlled substances, the applicable

penalty can increase to a term of not less than five nor more than 40 years' imprisonment under §

841(b)(1)(B), or to a term of not less than 10 years' and up to life imprisonment under §

841(b)(1)(A).

In *Jones v. United States*, 526 U.S. 227 (1999), the Court interpreted the federal carjacking

statute which, like § 841(b), provides for a series of graduated punishments based on the existence

of certain additional factors, as setting forth elements of separate offenses required to be alleged in

the indictment and found by a jury beyond a reasonable doubt.  In reaching its statutory holding, the

Court noted that a contrary interpretation may raise constitutional problems, noting that its prior

cases "suggest[ed]," but did not "establish," the principle that "under the Due Process Clause of the

Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other

than prior conviction) that increases the maximum penalty for a crime must be charged in an

indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id*. at 243 n.6.  In *Apprendi*

*v. New Jersey*, 530 U.S. 466 (2000), the Court resolved this issue, holding as matter of constitutional

law that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

reasonable doubt." *Apprendi*, 530 U.S. at 490.  Post-*Apprendi*, therefore, "where a defendant is

sentenced under the higher tiers of [§ 841(b)], that is, §§ 841(b)(1)(A) and (B), the quantity of drugs

involved must be charged in the indictment and proved beyond a reasonable doubt; otherwise, the

defendant should be sentenced to the lower sentencing range of § 841(b)(1)(C)." *United States v.*

*Copeland*, 321 F.3d 582, 602 (6th Cir. 2003).  Or, put another way, "[w]hen a defendant is found

12

guilty of violating 21 U.S.C. § 841(a)(1), he must be sentenced under 21 U.S.C. § 841(b)(1)(C) unless the jury has found beyond a reasonable doubt that the defendant possessed the minimum amounts required by § 841(b)(1)(A) and § 841(b)(1)(B)." *United States v. Ramirez*, 242 F.3d 348, 352 (6th Cir. 2001).

All of plaintiff's claims boil down to his core argument that the indictment in his case did not allege a quantity, nor did the jury find a specific quantity, and thus he was subject only to the 20 year maximum set forth in § 841(b)(1)(C). Because he was sentenced to 295 months' imprisonment, 55 months beyond this maximum, plaintiff argues that his sentence was illegal. This is certainly true had plaintiff's criminal case been pending after *Apprendi* was decided. However, plaintiff was resentenced on March 4, 1997, and the Sixth Circuit affirmed the Court's sentence on March 20, 1998, both of which were well before the Supreme Court's decisions in *Jones* and *Apprendi*. Under the non-retroactivity principal of *Teague v. Lane*, 489 U.S. 288 (1989), petitioner therefore cannot invoke *Appendi* to invalidate his sentence. As the Supreme Court has explained:

> When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987). As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see *Bousley v. United States,* 523 U.S. 614, 620-621 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle v. Parks,* 494 U.S. 484, 494-495 (1990); *Teague v. Lane,* 489 U.S. 288, 311 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620 (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974)).
>
> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a

small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle, supra,* at 495 (quoting *Teague,* 489 U.S., at 311). That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." *Id.,* at 313 (emphasis added). This class of rules is extremely narrow, and "it is unlikely that any . . . 'ha[s] yet to emerge.'" *Tyler v. Cain,* 533 U.S. 656, 667, n. 7 (2001) (quoting *Sawyer v. Smith,* 497 U.S. 227, 243 (1990)).

*Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (footnote and parallel citations omitted).  Under

*Teague*, the rule of *Apprendi* is not retroactively applicable to cases, such as plaintiff's, which were

final prior to that decision.  *See Regalado v. United States*, 334 F.3d 520, 527 (6th Cir. 2003); *Goode*

*v. United States*, 305 F.3d 378, 382 (6th Cir. 2002).

    Nor can plaintiff show that his sentence was illegal at the time it was imposed by the Court.

Prior to *Apprendi*, the courts of appeal, including the Sixth Circuit, uniformly held that drug quantity

was not "an element of the offense for purposes of the penalties prescribed in 21 U.S.C. §

841(b)(1)," but rather "was considered to be a 'sentencing factor' that the sentencing judge could

determine by a preponderance of the evidence." *United States v. Delgado-Marrero*, 744 F.3d 167,

185 (1st cir. 2014); *accord United States v. Promise*, 255 F.3d 150, 175 (4th Cir. 2001) (Luttig, J.,

concurring) (citing cases) ("[B]efore *Jones* was decided, every single court to address the issue of

Congress' intent in enacting section 841 concluded . . . that the elements of the section 841 offense

are set forth in their entirety in subsection (a) and that the facts arrayed in subsection (b) are mere

sentencing factors, which need not be charged in the indictment or proved to the jury beyond a

reasonable doubt."); *United States v. Anderson*, 122 F. Supp. 2d 1163, 1165 (D. Hawai'i 2000)

(noting this uniform treatment of § 841 prior to *Apprendi*).  *See generally*, *United States v. Caldwell*,

176 F.3d 898, 900-01 (6th Cir. 1999) (pre-*Apprendi* decision noting the "large body of precedent

hold[ing] that drug quantity is an issue with respect to sentencing only and is to be determined after

14

conviction by the district judge utilizing the preponderance of the evidence standard."). At the time of petitioner's resentencing, therefore, he was subject to all of the penalties set forth in § 841(b), dependent only upon the Court's determination of drug quantity under a preponderance of the evidence standard. In short, plaintiff's sentence was legal when imposed, and he cannot retroactively invoke *Apprendi* to invalidate that sentence. And because plaintiff cannot show that his underlying sentence is illegal, all of his claims premised on that alleged illegality must fail as a matter of law.

### b. *Bivens* Claims

In addition to the lack of merit of plaintiff's underlying substantive claim, each of his claims for relief suffers from independent flaws which render them insufficient as a matter of law. Plaintiff's *Bivens* claim fails because plaintiff has not named any defendant subject to suit under *Bivens*. In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that the Constitution implies a damages remedy against federal officers for the violation of a person's Fourth Amendment rights. *See id*. at 390-97. This implied damages remedy has since been expanded to include other constitutional violations. *See, e.g., Carlson v. Green*, 446 U.S. 14, 18-20 (1980) (Eighth Amendment); *Davis v. Passman*, 442 U.S. 228, 234-35 (1979) (equal protection); *Butz v. Economou*, 438 U.S. 478, 496-504 (1978) (First and Fifth Amendments). For the most part, the *Bivens* doctrine serves as a counterpart to suits against state officers under 42 U.S.C. § 1983. *See Butz*, 438 U.S. at 504. Accordingly, except for rulings regarding the state action requirement, the decisional law developed under § 1983 has been fully applied to *Bivens* suits. *See, e.g., id*. at 496-504; *Carlson*, 446 U.S. at 21-22; *Shaner v. United States*, 976 F.2d 990, 995 n.7 (6th Cir. 1992).

15

Here, however, plaintiff's *Bivens* claim fails because all of the named defendants enjoy sovereign immunity.         "[I]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed. 1961).  Thus, it is well established that "the United States, as sovereign, 'is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) (alteration in original); *accord Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  Because the United States has not waived its sovereign immunity with respect to *Bivens* claims, such claims may not be brought against the federal government or a federal agency.  *See Meyer*, 510 U.S. at 484-86.  Thus, plaintiff may not assert a *Bivens* claim against defendants Department of Justice or Bureau of Prisons.  With respect to the individual defendants named by plaintiff, he explicitly asserts his claims against them only in their official capacity.  *See* Compl., at 3-4.  It is well established that "[s]overeign immunity extends to United States officials who are sued in their official capacities." *Parks v. Reans*, 510 Fed. Appx. 414, 415 (6th Cir. 2013) (citing *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007)).  Because it is "clear from the face of the complaint that [plaintiff] is suing the defendants only in their official capacities," defendants are immune from suit on plaintiff's *Bivens* claims.  *Id.*; *see also*, *Okoro v. Scibana*, 63 Fed. Appx. 182, 184 (6th Cir. 2003).[2]  Accordingly, the Court should dismiss plaintiff's *Bivens* claims

---

[2]Although a *pro se* complaint is entitled to a liberal construction, plaintiff's complaint is explicitly asserted against defendants only in their official capacities, and the complaint otherwise provides no notice to defendants that they are being sued in their individual capacities.  Thus, the Court may not construe the complaint as asserting claims against the individual defendants in their individual capacities. *See Rodgers v. Banks*, 344 F.3d 587, 594-95 (6th Cir. 2003).

*c.  Privacy Act Claims*

Likewise, plaintiff's Privacy Act claims fail independently of the merit of plaintiff's underlying claim that his sentence is illegal.  The Privacy Act requires federal government agencies to maintain records, and provides for the means by which agencies must maintain and keep confidential those records.  *See generally* 5 U.S.C. § 552a.  As relevant here, the Act provides that "[e]ach agency that maintains a system of records shall . . . permit the individual to request amendment of a record pertaining to him and . . . promptly, either–(i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or (ii) inform the individual of its refusal to amend in accordance with his request . . . ."  5 U.S.C. § 552a(d)(2)(B).  If the request for amendment is denied, the agency must

> permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30-day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section.

5 U.S.C. § 552a(d)(3).  Under the Act, "[w]henever any agency . . . makes a determination under subsection (d)(3) of this section not amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection, . . . the individual may bring a civil action against the agency . . . ."  5 U.S.C. § 552a(g)(1)(A).  In such an action, a district court may "order the agency to amend the individual's record," and "assess against the United States reasonably attorney fees and other litigation cots reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552a(g)(2)(A).  In addition, a district court may

award the greater of $1,000 or the plaintiff's actual damages if it "determines that the agency acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4)(A). Plaintiff argues that defendants are liable under § 552a(g) because they willfully failed to correct his record.

"To state a claim for money damages under the Privacy Act, a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and consequently, that an 'adverse' 'determination [wa]s made' respecting the plaintiff." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552a(g)(1)(C)) (alteration in original); *see also*, *Meldrum v. United States Postal Serv.*, No. 99-3397, 2000 WL 1477495, at *2 (6th Cir. Sept. 25, 2000). In other words, "plaintiff must allege: inaccurate records, agency intent, proximate causation, and an 'adverse determination.'" *Toolasprashad*, 286 F.3d at 583. Plaintiff fails to state a claim under these elements, for two reasons. First, plaintiff cannot show that the Amended Judgment maintained by the BOP is a "record" subject to the § 552a(d). The Act provides that

> [t]he head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section except [subsection not applicable here] if the system of records is . . . maintained by an agency or component thereof which performs as its principal function any activity relating to the enforcement of criminal laws, . . . which consists of . . . information compiled for the purpose of identifying individual criminal offenders . . .and consisting only of . . . the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status.

5 U.S.C. § 552a(j)(2). Pursuant to this authority, the BOP has exempted from § 552a(d) and (g), *inter alia*, the Inmate Central Records System. *See* 28 C.F.R. § 16.97(j). A prisoner's Judgment is maintained in his Inmate Central Records System file. *See* U.S. BUREAU OF PRISONS, PROGRAM STATEMENT 5800.11, ¶ 9(a)(3) (Dec. 31, 1997). Because the record plaintiff challenges as inaccurate has been exempted from §§ 552a(d) and (g), his claim fails as a matter of law. *See White*

18

*v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (plaintiff's Privacy Act challenge to accuracy of presentence report was properly dismissed because "presentence reports and BOP inmate record systems are exempt from the amendment provisions of the Act."); *Jackson v. Federal Bureau of Prisons*, 538 F. Supp. 2d 194, 199 (D.D.C. 2008) ("BOP has exempted itself entirely from the access and amendment requirements of 5 U.S.C. § 552a(d) and the civil remedies of 5 U.S.C. § 552a(g) with respect to inmate records.").

Moreover, plaintiff cannot show that any record maintained by the BOP is inaccurate. Even if his underlying claim had merit–that is, even if plaintiff could show that his 295 month sentence is illegal–the Amended Judgment maintained by the BOP is not inaccurate. Plaintiff was, indeed, sentenced to a term of 295 months' imprisonment. He does not allege that the Judgment maintained by the BOP contains any "inaccurate factual statements," rather, "he essentially contests" the "legal conclusion" of the Court's "comput[ation of] the length of his sentence." *White*, 148 F.3d at 1125. As another court has explained, "'[t]he Privacy Act allows for the amendment of factual or historical errors,'" but it "'[i]s not . . . a vehicle for amending the judgment of federal officials.'" *Jacobs v. Bureau of Prisons*, 845 F. Supp. 2d 224, 229 (D.D.C. 2012) (quoting *Kleiman v. Department of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992). Plaintiff, essentially, seeks to challenge the Court's judgment that he is legally subject to a 295 month sentence. He does not challenge the factual accuracy of any information contained in the Amended Judgment. Thus, his Privacy Act claim fails as a matter of law.

Finally, to the extent plaintiff asserts his Privacy Act claim against the individual defendants, his claims fail as a matter of law because "an agency is the only proper defendant under the Act and, therefore, individuals may not be named as defendants in such actions." *Wheeler v. Gilmore*, 998

19

F. Supp. 666, 668 (E.D. Va. 1998); *see also*, *Wheeler v. Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997).

C.     *Plaintiff's Motions for Injunctive Relief*

Also pending before the Court are two motions for preliminary injunctive relief filed by plaintiff.  The Court should deny these motions.

"In the exercise of its discretion with respect to a motion for preliminary injunction, a district court must give consideration to four factors:  '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *American Civil Liberties Union of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)); *see also*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003).  "'The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.'" *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir.2001)); *see also*, *Taubman Co.*, 319 F.3d at 774. Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry.  Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also*, *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is

simply no likelihood of success on the merits must be reversed."). Further, plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Thus, plaintiff may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate his entitlement to injunctive relief.

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not merely to maintain the status quo pending resolution of the case but to obtain affirmative relief. As the Supreme Court has explained, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because of this, courts have identified three types of particularly disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Motions seeking that latter type of relief most be more closely scrutinized than the already-disfavored motion for preliminary injunction which seeks to maintain the status quo. *See id.*; *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988).

Here, as explained above, plaintiff's claims are subject to dismissal under *Heck*, and fail to

21

state a claim for relief on the merits.  "An action that [can] not survive a Fed.R.Civ.P 12(b)(6) motion [can] not, *a fortiori*, satisfy the preliminary injunction standard." *Burritt v. New York State Dep't of Transp.*, No. 08-CV-605, 2008 WL 5377752, at *1 (N.D.N.Y. Dec. 18, 2008); *see also*, *JDC Management, LLC v. Reich*, 644 F. Supp. 2d 905, 918 (W.D. Mich. 2009) ("The failure to show any likelihood of success on the merits . . . is enough, by itself, to warrant denial of preliminary injunctive relief.").  Because plaintiff's claims are subject to dismissal under Rule 12(b)(6), the Court should deny plaintiff's motions for preliminary injunctive relief.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff's claims challenge the validity of his sentence, and thus are barred by *Heck*.  In the alternative, the Court should conclude that plaintiff's claims fail to state a claim upon which relief may be granted.  Accordingly, the Court should grant defendants' motion to dismiss.  If the Court accepts this recommendation, the Court should also deny plaintiff's motions for preliminary injunctive relief.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS:</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: September 5, 2014                    s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on September 8, 2014, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Paul J. Komives

23